ANDERSON & SON *v.* MAYOR AND COUNCIL OF. WILMINGTON.

*Municipal Corporations—Control of Streets—Flooded Cellars.. Damages.*

A municipal corporation, charged by the legislature with the maintenance of the public streets, highways, and sidewalks in it in safe and proper condition for public use, is bound to perform this duty with diligence, and without negligence.

It may authorize by license parties not in its employ to open the public streets and side-- walks, with trenches to connect house drains, water or gas pipes, with the public mains in the street, for private advantage alone, but has the same responsibility in the work as if it were being done by its own agents ; and has the power to take from them indemnity to protect the city from liabilities growing out of˙ the grant of such privileges.

A municipal corporation is liable for damages to the plaintiffs from the flooding of their cellar, the consequence of the negligent work of a plumber acting under its license in laying a private drain from a house to the public main in the street.

Plaintiffs are entitled to such damages as they sustained as the natural and probable consequences of the flooding, including the damage to goods, and the loss of the use of their cellar.

(*New Castle, December, 1889.*)

TRESPASS on the case for injury caused by flooding the cellar· of plaintiff's store· at corner of Delaware avenue and Jackson: street.

*Levi C. Bird* and *A. H. Sanborn,* for the plaintiff :

The law of Delaware-chartering the City of Wilmington expressly gives the city the control of the streets, and imposes upon it the duty of repairing the streets and removing *nuisances* there-- from.

Vol. 17, Laws of Del., Page 435, Sec. 31.

The Street and Sewer Department as agent of the City now has the exclusive control of the streets.

Vol. 18 Laws of Del., Page 352.

I. A Municipal Corporation having by its charter the control of the streets is liable to any one injured without fault on his part, either in his person or property by defective and unsafe streets or sidewalks.

The Municipal Corporation is bound to keep its streets and sidewalks in good order and condition for the public.

Charge of Chief Justice Comegys in *Robinson v. City of Wilmington*, Feb. Term, 1889 ; *Brown v. District Columbia*, 91 U. S., 540; *Gordon v. Richmond*, 2 S. E., 727 ; *S. C.* 2 *Thomp. Neg.*, 678–691 ; 1 *Sher. & Red. Neg.*, Sec. 289, p. 503 ; *City Chicago v. Dalle*, 5 N. E., 579 ; *Glantz v. City South Bend*, 6 N. E., 632.

II Where the duty of keeping its streets in a safe condition rests upon a Municipal Corporation it is liable for injuries to persons or property caused by its neglect, or omission to keep the streets in repair.

It is also liable for injuries occasioned by the wrongful acts of others provided the corporation had notice of the defects which caused the injury, or facts from which notice thereof may reasonably be inferred or proof or circumstances from which it appears that the defects ought to have been known and remedied by it.

2 *Dillon Muns. Corporations*, Sec. 1024 ; 2 *Dillon Muns. Corporations*, Sec. 1027 ; 2 *Dillon Muns. Corporations*, Sec. 1034 ; 1 *Sher. & Red. Neg.*, Sec. 290–301 ; 2 *Sher. & Red. Neg.*, Sec. 358–360 ; 2 *Thompson, Neg.*, Page 766, and Note 8 ; 2 *Thompson Neg.*, Page 753–754 ; 2 *Thompson, Neg.*, Page 787–788 ; *Cooley Torts*, Page 625 ; *Baltimore v. Pendleton*, 15 Md., 12 ; *Wendell v. Troy*, 43 N. Y., 261 ; *City Springfield v. Le Cloun*, 49 Ill., 476 ; *Starrs v. City Utica*, 17 N. Y., 104–105–106–107–108 ; *Hickock v. Trustees Plattsburg*, 15 Barb., 427 ; Ct. Appeals, 16 N. Y., 161 ; *Merrill v. Wilbraham*, 11 Gray, 154 ; *Dock v. East St. Louis*, 685 Ill., 377 ; *Nashville v. Brown*, 24 Am. Rep., 289 ; *Regna v. Rochester*, 49 N. Y., 129 ; *Boston v. City Syracuse*, 36 N. Y., 54–58.

III. Municipal corporations owe a duty of active *vigilence* to the public in respect to the condition of highways under their control. They are bound to discover any defects therein within a reasonable time, although caused by the negligent acts of others. For practical purposes the opportunity of knowing in such cases stands for actual knowledge.

In each case it is for the *jury* to determine whether or not the city had notice.

2 *Sher. and Red. Neg.* Sec 369 ; 2 *Thomp. Neg.*, page 762–763 ; *Whittakers Smiths Negligence*, page 257 ; 2 *Dillon Municipal Corp.* Sec. 1026, page 1050, and note page 1053 ; *Shul v. Appleton*, 49 Wic., 125 ; S. C. 5 N. W., 27 ; *Colly v. Inhab. Westbrook*, 57 Me., 181 ; *Howe v. Plainfield*, 41 N. H., 135 ; *Springer v. Bowdingham*, 7 Me., 442 ; *Kuntz v. City Troy*, 104 N. Y., 344 ; *City Bermingham v. McCrary*, 4 Southern R., 630 ; *Pomfray v. Saratoga Springs*, 104 N. Y., 459–465–470 ; *City Chicago v. Dalle·* 5 N. E., 578 ; *Sullivan v. City Oshkosh*, 13 N. W., 468 ; *City Springfield v. Doyle*, 76 Ill., 202 ; *Merrill v. Inhab. Wilbraham*, 11 Gray, 157 ; *Moses v. City Troy*, 61 Barb., 680 ; *Bradbury v. Falmouth*, 11 Me., 64.

IV. Where a municipal corporation permits a third person to interfere with the street over which it has control it is bound to exercise a supervision of the work, so as to prevent consequent injury, the same as if the work was done by its own agents for the benefit of the public.

*Sher. & Red Neg.* Sec. 358 ; *City Bermingham v. McCrary*, 4 S. R., 630–633–634–635 ; *Boucher v. New Haven*, 40 Conn., 457 ; *Wendall v. Troy*, 4 Keys, 261 ; Reported below, 39 Barb., 261 ; *Baltimore v. Pendleton*, 15 Md., 12 ; *Hutson v. New York*, 9 N. Y., 163 ; *Reported Below*, 5 Landf., 289 ; *Brooks v. Somerville*, 106 Mass., 271.

V. A Municipal Corporation having power to remove a nui-

sance, but neglecting so to do, is liable for injuries caused by such neglect.

2 *Thomp. Neg.*, Page 741–753–754; *Wharton Neg.*, Sec. 265; *Baltimore v. Morrell*, 9 Md., 160–173–174–175–178; *Baltimore v. Pendleton*, 15 Md., 12; *City Alton v. Hopes*, 68 Ill., 167; *Wendell v. Troy*, 4 Keys., 261; *Slock v. East St. Louis*, 85 Ill., 377; *Lawrence v. Fairhaven*, 6 Gray, 110; *City Aurora v. Reed*, 57 Ill., 30–33–34.

*J. Frank Ball* and *Henry C. Turner* for the defendant prays the Court to instruct the jury as follows:

*First.* That George B. Ward, a plumber, was acting under an independent contract to do the plumbing and make the connections with the Delaware Avenue Sewer for the purpose of draining the premises No. 1006 Delaware Avenue, and that the City of Wilmington had no control or management of the said work nor over the selection of the persons hired to execute the said work, and reaped no benefit from said work, therefore the relation of master and servant did not subsist between the Mayor and Council of Wilmington and the said George B. Ward, contractor aforesaid, and the City of Wilmington is not liable in law for the negligence, if any, of the said George B. Ward, contractor as aforesaid, whereby the premises of the plaintiffs were flooded on the night of December 31st, 1887, and the subsequent day, and this notwithstanding the said contractor received a permit from the Street and Sewer Department of the City of Wilmington to open the bed of Delaware Avenue for the purpose of laying the said drain.

*Second.* That the evidence offered in this case shows that the said George B. Ward, at the time of making the excavation in Delaware Avenue which is alleged to have been the cause of the injury in this suit complained of was acting under an independent employment, the Mayor and Council of Wilmington having no control over the mode and manner of work nor the selection of the

workmen to execute the same, therefore the doctrine of *respondeat superior* cannot obtain as between the Mayor and Council of Wilmington and George B. Ward, contractor as aforesaid, and that this defendant is not liable in law for the negligence, if any, of the said contractor, whereby the premises of the plaintiffs were flooded on the night of December 31, 1887, and the subsequent day.

*Third.* The evidence offered in this suit discloses, that George B. Ward, a plumber, received a permit from the Board of Directors of the Street and Sewer Department of the City of Wilmington and thereupon opened the bed of Delaware Avenue for the purpose of making a drain connection from the premises 1006 Delaware Avenue to the sewer of the Delaware Avenue Sewer Company; that in making the excavation aforesaid, the said George B. Ward was exercising an independent employment for private parties and for private benefit; that the said George B. Ward was not in any sense acting as an officer, servant, or agent of this defendant, and that the granting of the permit did not in any sense make him such while engaged in such employment for private parties and for a private purpose; that this defendant is not shown to have had control over the mode and manner of the work nor over the selection of the workmen engaged in executing the same, so as to raise the relation of principle and agent, or master and servant, but the reverse of this is shown by the proof; that this defendant is not shown to have received such actual notice nor has a lapse of time been proved sufficient to imply notice of the dangerous character of the excavation in the street which would make the city responsible for the maintaining of a public nuisance; that the damage occasioned by reason of the negligence, if any of the said George B. Ward, contractor as aforesaid, or his employees in and about the excavation aforesaid on the night of the 31st day of December, 1887, or the subsequent day, is not imputable to the defendant and the plaintiffs cannot recover the same from the said defendant; and this notwithstanding any legal obligation which may exist obliging

this defendant to keep its streets in good order and repair the purpose for which the excavation was made being a lawful one and the Board of Directors of the Street and Sewer Department a lawfully constituted agency of this defendant having the lawful right to grant such permit for the said lawful purpose.

1. A city having the power to build and construct sewers, has also the right flowing incidentally from that power of granting a permit to owners of abutting lots to open the bed of the highway to connect private drains with said sewers.

2. The giving of such permission is an exercise of power for which the corporation as a governing body is not amenable to an individual who may have suffered by the negligence of the lot owners or his employees in the manner of using the license and interfering with the street, provided such negligence act does not amount to a nuisance of which the city had actual or implied notice.

*Shearman* and *Redfield on Nuisance,* Sec. 263.

3. A Municipal corporation is not liable for the acts of persons it licenses to use its streets unless the thing authorized is intrinsically dangerous, or the Municipal authorities have notice of the negligence of its licensee.

4. The employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract work and entirely the result of the negligence or wrongful acts of the contractor, sub-contractor or his servants ; in such a case, the immediate author of the injury is alone liable.

5. The rule or maxim respondeat superior is limited by this principle. The responsibility of the master grows out of, is measured by, begins and ends with his control of the servant. If the master who is sought to be charged with the wronful act of another, did not contract with him for his labor or services and is not liable to

him for compensation therefor, and has no such control over him as will enable him to direct the manner of performing the labor, he is not liable.

3 *Ed. Dillon Mun. Corp.* Sec. 1030, 101; *Shearman & Red-field on Negligence,* Secs. 263, 168, 169, 298; *Thompson on Negligence,* page 740, 750, 908; *Wharton on Negligence,* Sec. 181, 191, 259; *Story on Agency,* page 552; *Parsons on Contracts,* page 87; *Greenleaf on Evidence,* p. 207, Sec. 232, b; *Reedie v. The London N. W. R. W. Co.,* 4 Exch., 244; *Knight v. Fox & Henderson,* 1 Eng. L. & Eq., 477; *Overton v. Freeman & Another,* 8 Id., 479; *Peachy v. Rowland,* 16 Id., 442; *Borough of Chester v. Apple,* 35 Pa. St., 284; *Painter v. Pittsburg,* 46 Id., 213; *Hunt v. Penna. R. R.* 51 Id., 475; *Allen v. Willard,* 57 Id., 374; *Ardesco Oil Co. v. Gilson,* 63 Id., 162; *Reed v. Allegheny City,* 79 Id., 300; *Wray v. Evans,* 80 Id., 102; *Erie v. Calkins,* 85 Id., 247; *Harrison v. Hollins,* 86 Id., 153; *School Dist. of Erie v. Fuess,* 98 Id., 600; *Smith v. Simmons,* 103 Id., 32; *Borough of Susquehanna Depot v. Simmons and wife,* 14 A. & E. Corp. Cas., 449; *Chartiers Valley Gas Co. v. Waters,* 16 At. Rep., 423; *Blake v. Ferris,* 5 N. Y., 43; *Pack v. New York.,* 8 N. Y., 222; *Griffin v. The Mayor &c. New York,* 9 N. Y., 456; *Kelley v. New York,* 11 N. Y., 432; *Masterton v. Mt. Vernon,* 58 N. Y., 391; *McCafferty v. Spuyten Duyvil,* 61 N. Y., 178; *King v. R. R. Co.,* 66 N. Y., 181; *Dorlon v. Brooklyn,* 46 Barb., 604; *Hart v. City of Drooklyn,* 36 Barb., 226; *Alexander v. Webb,* 101 N. Y., 377; *McQuire v. Grant,* 25 N. J., 356; *Deford v. State,* 30 Md., 179; *Brown v. Werner,* 40 Md., 15; *Anne Arundel County v. Duvall,* 54 Md., 350; *Thames Steamboat Co. v. Housatonic Co.,* 24 Conn., 40; *Corbin v. The American Mills,* 27 Conn., 274; *Lawrence v. Shipman,* 39 Conn., 586; *Palmer v. St. Albans,* (1888) 20 A. & E. Corp. Cases, 392; *Grigg v. Fleckenstine,* 14 Me., 96; *Eaton v. European & North American R. W. Co.,* 59, 520; *Tibbetts v. Knox & Lincoln R.R. Co.,* 62 Me., 437; *Samyn v. McCloskey,* 2 Ohio St., 536; *Carmen v. The Stuben-*

*ville & Ind. R. R.,* 4 Ohio St., 399; *Cincinnati v. Stone,* 5 Ohio St., 38; *Clark v. Fry,* 8 Ohio St., 358; *Stackhouse v. Lafayette,* 26 Ind., 17; *Ryan v. Curran,* 64 Ind., 345; *Dooley v. Town of Sullivan,* 14 N. E. Rep., 566; *Warsaw v. Dunlap,* 112 Ind., 576; *Scannon v. Chicago,* 25 Ill., 424; *Nevins v. City of Peoria,* 41 Ill., 502; *Mercer v. Jackson,* 54 Ill., 397; *Hale v. Johnson,* 80 Ill., 185; *Kellogg v. Payne,* 21 Iowa 575; *Callahan v. The Burlingtan & Missouri Direr R. R. Co.,* 23 Iowa, 562; *De Forrest v. Wright, et al.,* 2 Mich., 368; *Hooper v. Milwaukee,* 30 Wisc., 365; *St. Paul v. Leitz,* 3 Minn., 297; *Barry v. St, Louis,* 17 Mo., 121; *Morgan v. Bowman,* 22 Mo., 538; *Hilsdorf v. St. Louis,* 45 Mo., 94–98; *Blumb v. City of Kansas,* 84 Mo., 112; *Robinson v. Webb,* 11 Bush (Ky.,) 464; *Palmer v. Lincoln,* 5 Neb., 136; *Boswell v. Laird,* 8 Cal., 489; *Fangoy v. Searles,* 29 Cal., 243; *Du Pratt v. Lick,* 33 Cal., 691.

That this defendant is not responsible for any damage which may have happened to the property of the said plaintiffs by reason of the flooding of the same with surface water occasioned by the grade of the public highway.

*Clark v. Mayor & Council of Wilmington.*
*Magarity v. Mayor & Council of Wilmington.*

COMEGYS, C. J., (*charging jury.*) This action was brought by the plaintiffs to recover damages for injuries to their merchandise, they being merchants at the south-west corner of Delaware avenue and Jackson street, by the flooding of their cellar, on the 31st of December, 1887, with water which fell in a rain-storm prevailing at that time. The way in which the water got into the celler was, as testified by the witnesses, by and through a channel or trench cut through the sidewalk from the house No. 1006 on said avenue to a private drain or sewer, built under the southern side thereof, and a few feet from the curb on that side. The depth of the trench was about eight feet, and the object in opening it was to lay pipes for waste and drinking water, for the use of said building. The

drain pipe laid in it was five inches in diameter, and the water-pipe about of half an inch dimension. The latter, to be connected with the water-main, was further in the street than the former, which' was intended to be connected with the private sewer aforesaid. The work of excavation was begun on the day aforesaid, and the drain-pipe was laid from the cellar of the house to a point in the avenue near the sewer; but the work was stopped there, for a reason to be hereafter stated. According to the testimony offered by the defendant upon this point, the street end of the drain-pipe was stopped when the work ceased with bricks and cement, and the trench was filled up in the street so that vehicles could pass over it, and in the sidewalk so to make it safe for foot passengers. Whether, in view of what took place that night, this testimony is to be entirely relied upon, it is for the jury to decide. As stated before, a rain-storm occurred that night, which was, by all the testimony, a very heavy one, and it fell upon snow already over the ground, by the melting of which the volume of water was necessarily increased. The end of the drain-pipe, which was under the cellar of the house, about two feet below the surface, was not stopped at all. The next morning after the rain, which, however, fell more or less most of that day, not only was the cellar of the house No. 1006 full of water, but also the celler of the house next adjoining towards Jackson street, the house adjoining it, and also the house at the corner, occupied by the plaintiffs. At this point in the city—that is, from Jackson street out westwardly—there is a grade in the avenue from the west, eastward to Jackson street, of a half inch to the foot, as testified by an engineer witness. The statements of the witnesses on both sides differ as to the state or condition of the trench on the morning of the 1st of January, 1888, and the jury must decide which of them are most entitled to credit in their statements. But, however the exact fact may be with respect to the trench, one thing would seem to be true, and that is that, as no proof has been given by the defendant from which it would appear that the water entered the cellars by their windows or in any other way, it must have got into

them by way of the trench aforesaid, or drain-pipe, or both,—that is, first into the cellar of No. 1006, and thence into the others ; it having been shown by the testimony of the plaintiff's witnesses, and not opposed by any proof on the part of the defendant, that there were holes under the foundations of the party-walls of the houses connected with it, down to and including that occupied by the plaintiffs,which showed flowage of water through them from one cellar to another throughout the tier. These facts, which I have endeavored to state accurately, and the refusal of the defendant to recognize its liability to the plaintiffs for the damage which, by the testimony of the senior partner, accrued to them by the flooding of their cellar with the water coming into it from the source aforesaid, have occasioned this suit, now on trial before you. If the water got into the cellar of No. 1006, as claimed by the defendants, and as seems most probable,—though it is for you to decide as to that question,—then it must have been because of insufficient stopping of the drain-pipe at the outer end, or the negligent filling up of the trench across the payment and into the street, or both. There would then be a negligent or insufficient performance of that work, necessary to be done properly, for which liability to the plaintiffs would exist somewhere. The defendant's counsel insist that such liability does not rest upon it, but it is to be enforced against another party, to-wit, the plumber who laid and stopped the pipe, and filled up the trench, both of which works they insist were well and sufficiently done. It must be obvious, however, from the disaster itself, there being, so far as we remember, no proof from which other means of causing it can be inferred, that it could not have been properly done, else the calamity could not have occurred. Who, then, or, rather, what party, is liable to the plaintiffs,—the defendant or the plumber ? This is an important question ; and, it being one of law, it is our duty to instruct you what, in such cases, the law is.

The defendant here is a municipal body or public corporation, to which the legislature has, from time to time, given large powers,

to be exercised for the welfare of its people; and, as a correlative provision for the like welfare, has charged it with very responsible services, one of the most important of which is the maintenance of the public streets, highways, and sidewalks in it in safe and proper condition for public use. And in order to enable it to execute the trusts of its creation in a complete manner, for the welfare of all, there has been conferred upon it the sovereign power of taxation, by which, for legitimate public purposes, exactions to any proper extent may be made upon its citizens and their property to supply the city treasury with all necessary money for its exigencies. At the same time there went with all this fullness of power, and means to support it, a duty of the highest character to perform all its trusts with diligence, without negligence, and in entire fidelity to its inhabitants. Without such an obligation resulting from the relation it was to bear to the people within its boundaries, no public charter ever would have been granted to it by the legislature. As the corporation itself, being an artificial body only, cannot render this service of itself, it may employ agents for such purpose; and, in fact, constantly does so. Under the authority of its charter, and the ordinances passed in pursuance of legislative power, it oftentimes authorizes by license parties not in its employ to do certain things; as, for example, in the case before us, to open the public streets and sidewalks with trenches, to connect house-drains, water or gas pipes, with the public mains in the street, taking from them, or having the power to take, indemnity to protect the city from suits or liabilities of any kind growing out of the grant of such privilege, which, like all privileges, may be abused in some way to the detriment of an individual. This case is an example of such a privilege; and if you give full credit to the plaintiffs' testimony, of detriment to them, resulting therefrom by carelessness in using it. The defendant's counsel claim that no liability on account of it devolves upon the defendant, and plant themselves upon the ground that the person to whom the privilege was granted was neither its servant nor agent in the work he undertook, but was acting as an

independent contractor entirely, to whom the plaintiffs must look for their redress; and they have referred the court to a great number of authorities upon the point that a municipal body is not liable for the act or omission of such a party executing a public work. Without gainsaying the general proposition made to the court, we instruct you that it does not apply to cases where, as in this case, the party using the privilege is no contractor with such a body at all, but, by its consent, is allowed to use such privilege for private advantage alone. As such involves what, without the permission, would be a public nuisance, it is the duty of the municipal body to see to the work the same as if it were being done by its own agents, in order that it may be done diligently and properly, and not negligently, to the risk of detriment to individuals. As the work could not be done without its permission, to hold it not responsible for the consequences of negligent conduct in doing it would be to say that it could at pleasure relieve itself of its public duty of taking care that the streets of the city are maintained in safe condition for the use of passengers, and so as that no damage shall accrue to individual parties in doing work in them, such as has happened to the plaintiffs in this action or otherwise. The public duty we are considering is one that at no time can be extinguished or abated even at the mere will and pleasure of the municipal body, or of its own accord. It is as obligatory upon it as is the payment of taxes upon an individual, and can neither be assigned nor transferred to individual parties, so as to relieve itself from such incident to its existence. It may make contracts with individuals to perform its public duty for it, and take indemnity therefor, and enforce such indemnity, but that does not relieve it, as to the citizen, of such public duty. It is on this account that, as the authorities cited upon the point by the plaintiffs' counsel show, where a work is being done by permission of a municipal body, of a kind likely to cause, or that may cause, injury to individuals, it is the part of such body to exercise a vigilant supervision of the work, to see that no detriment to them ensues. Not to

do this is held to be negligence, for which it is liable to a party injured. Further elaboration of this point is unnecessary.

The result of the examination we have been able to give the cause of this case in the brief time allowed us is that, if the damage to the plaintiffs from the flooding of their cellar was in your opinion, from the testimony, the consequence of negligent work of the plumber in stopping the end of the drain-pipe in Delaware avenue, and the trench thence to the wall of No. 1006, or either, and that if the officers of the defendant had given supervision to the work, as was incumbent on them, the disaster would not have happened, then neglect to do so, if there was such, on their part, was the cause of the accident, and the city is liable for the consequence of it. In fact, the issuance of the license to excavate before permission was obtained by the license to connect with the private sewer in the street, as shown by the plaintiffs' proof, was an act of negligence on the part of the defendant's agents; and, it having been testified to that the work of attachment to the private sewer was suspended on the afternoon before the flood came, to receive said permit, and could have been finished if it had been received, the injury to the plaintiffs could hardly have occurred through flowage of water through the drain-pipe, if such attachment had been made; and if you believe from the testimony that it did happen for want of such attachment, or from neglect of duty by the agents of the city to see that the trench was properly filled up,—if you think the water got into the cellar of No. 1006 through that channel,—then the defendant is liable for the plaintiffs' damages, and the defendant, and not the plaintiffs, must look to the plumber for responsibility. Should you find for the plaintiffs, they are entitled to recover for such damage as you believe they sustained as the natural and probable consequences of the flooding, according to their proof, whatever that may be, taking all the items of damage alleged into consideration, and adopting such of them as you think right; but, with respect to any damage that is alleged to have occurred afterwards, you should not allow for any of that, if it

could have been avoided by the plaintiffs. They could not enhance the defendant's liability by putting their goods where they knew they would be injured, or had reason so to believe ; but for inability to use their cellar, which I believe is one of their items, they may recover, if claim is made on that account.

Verdict for the plaintiff.